## CARR FASTENER CO. v. MAGNUS & EAS-TERMAN CO. et al.

### No. 2825.

District Court, E. D. Michigan, S. D.
Jan. 15, 1931.

Emery, Booth, Janney & Varney (by Lawrence G. Miller), all of Boston, Mass., and Barthel, Flanders & Barthel (by Ralph S. Binns), all of Detroit, Mich., for plaintiff.

Fraser, Myers & Manley (by Louis E. Giles), all of New York City, and Whittemore, Hulbert, Whittemore & Belknap (by Clarence Zewadski), all of Detroit, Mich., for defendants.

SIMONS, District Judge.

The bill is filed to obtain relief against infringement of two patents for fasteners issued to F. S. Carr; the first patent being No. 1,535,981, and the second being No. 1,535,-982. The fasteners disclosed in the patents in suit are of the type called snap fasteners, and are produced commercially for use in attaching the floor rugs of automobiles to the floor boards. It is admitted that, if the claims of the patents are valid, the defendant infringes, and the only issues raised go to the validity of the patents in the light of the disclosures of the prior art.

The fastener described in the patents in suit consists of a stud fastened to the floor, and a socket attached to the under side of the carpet and so designed as to engage the stud. The socket element has a plurality of prongs stamped out of the material of the socket and rising from its outer periphery, which are bent outwardly and downwardly over the carpet web and concealed by the pile; the socket having a stud-receiving opening with provision made for resiliently engaging the stud member, and having a wall positioned between the prongs and opening to seat on a support beneath the carpet to oppose the tipping of the socket when lateral strain is exerted upon the carpet, while providing a fulcrum against the underlying support about which the socket may be tipped when the carpet is pulled upwardly at one side of the socket, the prongs providing a favorable disengaging leverage for application of force at a point relatively remote from such fulcrum to spring the socket free from the stud. Among the advantages claimed for this construction is that the socket will not easily be disengaged by lateral pull along the plane of the floor, and that the outwardly projecting prongs downwardly curved will provide sufficient leverage to easily disengage the socket from the stud by an upward pull. The attachment of the socket member to the carpet has been rather fancifully, although not altogether inaptly, described by counsel as resembling that of a cockleburr as it attaches itself to clothing.

In the prior art, to which voluminous reference is made, various methods have in the past been used to attach the socket member of a snap fastener to rugs, leather, or fabric, sometimes by sewing and sometimes by riveting or clamping, or by a sort of metallic sewing by means of resilient prongs. One of the novel features claimed by the patentee, at least by way of argument, is that there is no clamping effect between the outwardly and downwardly bent prongs and any underlying surface of the socket member. This claimed novelty with its resulting advantages is challenged by reference to the Shipman patent, No. 737,875. The Shipman patent discloses upstanding prongs rising not from the periphery of the socket member, but from a point within its outer periphery, and bent outwardly and downwardly to engage the material to which it is fastened. It shows also, however, an outwardly extending flange to which the material is apparently clamped. There are also other essential differences between the patents in suit and Shipman, which need not in detail be discussed. It is sufficient, I think, for the purposes of this suit, to know that Shipman, though preceding the patentee by over twenty years, founded no industry, that a large and substantial business has been built up upon the Carr patents, and that the defendant, while not precisely imitating the patented design, nevertheless admittedly infringes upon it. Other considerations also tend to show that the patents were not anticipated by Shipman, and that Shipman did not disclose a device which solved a problem long sensed but never solved in the art. A sample fastener made upon the teachings of Shipman was introduced and demonstrated at the trial. Upon being subjected to lateral pull along the plane of the carpet, a hand pull made undoubtedly with less force than would be applied to the carpet by the scuffing of feet

on the part of passenger or driver in getting in and out of the car, the socket was easily unseated from its stud. It may fairly be presumed that the sample fastener made to illustrate Shipman, while not enlarging upon the teachings of the patent, was made as stiff and as closely fitting as possible to illustrate the claimed anticipation. Nevertheless, the Shipman device failed. It appears moreover in the record that the United States Fastener Company, one of the principal firms in the industry, purchased the Shipman patent and relied upon it to support its commercial output. When sued for infringement by the plaintiff herein, and after it had set up the same prior art here relied upon in addition to Shipman, the United States Fastener Company consented to a dismissal of the suit against it and took a license from the plaintiff. It is urged that no inference may be drawn from the result of this litigation because no decree was entered sustaining the validity of the patent. This court, however, is aware, through experience, of the lengths to which defendants will go to avoid having judgment or decrees entered against them, and I think the recognition of the plaintiff's patents by the United States Fastener Company through it accepting a license from the plaintiff is substantially a tribute to the validity of the patents as though it had permitted a consent decree to be entered against it.

While Shipman is the most pertinent reference in the prior art, the defendant relies upon other patents, notably Snyder, No. 1,-166,417. Snyder shows a sort of metallic sewing, and was intended primarily for articles to be laundered. The socket casing is attached to the fabric by the clamping effect of its metal prongs, and not by hooks in the cockleburr fashion previously referred to, in describing the patented devices in suit. There is, moreover, on the part of the defendants, the usual effort to suggest a combination anticipated perhaps in respect to one element in one prior patent and in respect to another element in some other prior patent. I am convinced that no such combination of old elements as has been suggested presents to the art precisely what the patentee here has contributed, and, even though it did, it would not negative invention.

Of the claims relied upon in the patents in suit, those chiefly urged are claims 17 and 20 in the first patent in suit, and claim 10 of the second patent in suit. I find such claims valid and infringed. A decree will be entered in respect to these claims in response to the prayer of the bill, and in conformity with this opinion.